The Decision and Order below is hereby signed.

Dated: August 29, 2006.



*S. Martin Teel Jr.* [signature]

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JAMES G. BARNES and IRALINE | ) | Case No. 04-01124 |
| G. BARNES, | ) | (Chapter 7) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| COLOMBO BANK, FSB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 06-10028 |
| JAMES G. BARNES, | ) | |
| | ) | |
| Defendant. | ) | |

DECISION AND ORDER RE MOTION TO DISMISS

The court will deny the motion to dismiss filed by the defendant Barnes for the following reasons.

The plaintiff seeks under 11 U.S.C. § 727(d)(3) to revoke Barnes's discharge based on Barnes's alleged refusal to comply with several orders. Under 11 U.S.C. § 727(d)(3), the court shall revoke a discharge if "the debtor committed an act specified in subsection (a)(6) of this section[.]" Section 727(a)(6), in turn, provides, in relevant part, for denial of a

discharge if "the debtor has refused, in the case . . . to obey any lawful order of the court . . . ."

I

Under a literal reading of the statute, the complaint is timely because 11 U.S.C. § 727(e)(2) permits a § 727(d)(3) complaint to be pursued any time prior to the closing of the case and the defendant's bankruptcy case was never closed. Barnes nevertheless argues that the complaint is untimely because it is based upon his failure to comply with orders prior to entry of the discharge.

The holding in Canfield v. Lyons (In re Lyons), 23 B.R. 123, 125-26 (Bankr. E.D. Va. 1982),[1] is consistent with Barnes's argument. Furthermore, the Lyons decision is cited to in Collier's for the proposition that:

> The purpose of section 727(d)(3) is to make it possible for the debtor to obtain a discharge early in the case but, to protect the estate and creditors, make it revocable if the debtor later refuses to obey an order or answer a question. [Citing S. Rep. No. 1173, 91st Cong., 2d Sess. 12 (1970).] The "refusal" under section 727(d)(3) should be considered a refusal that occurs after the granting of the discharge. Adequate remedy is provided in section 727(a)(6) for any refusal

---

[1] See also Longo v. McLaren (In re McLaren), 136 B.R. 705, 717 (Bankr. N.D. Ohio 1992), aff'd, 3 F.3d 958 (6th Cir. 1993); Werner v. Puente (In re Puente), 49 B.R. 966, 969 (Bankr. W.D.N.Y. 1985). Dicta in two other decisions supports Barnes's position. See Katz v. Araujo (In re Araujo), 292 B.R. 19 (Bankr. D. Conn. 2003); Concannon v. Costantini (In re Costantini), 201 B.R. 312, 315 (Bankr. M.D. Fla. 1996).

2

that occurs before discharge. [Citing <u>Lyons</u>.][2] 6 Collier's on Bankruptcy, ¶ 727.15[5] at 727-77 (15th ed. 2003). Neither <u>Lyons</u> nor Collier's persuades me that § 727(d)(3) is limited to post-discharge refusals.

First, <u>Lyons</u> simply assumed that § 727(d)(3) "does not give a party in interest, who has knowledge of the probable wrongdoing the privilege to wait until after a discharge is granted to ask the court to revoke the discharge." <u>Lyons</u>, 23 B.R. at 126. Moreover, <u>Lyons</u> was decided before a long line of Supreme Court decisions clarified that the plain language of a statute must be enforced if it is not the product of a scrivener's error and it does not produce a demonstrably absurd result that Congress could not have intended. <u>See</u>, <u>e.g.</u>, <u>United States v. Ron Pair Enterprises</u>, 489 U.S. 235, 241 (1989). Here, there was no such scrivener's error or demonstrably absurd result that warrants disregarding the statute's plain meaning.

Nothing in the Senate Report[3] cited to by Collier's (if it is even appropriate to examine that Report in interpreting the statute despite its plain meaning) supports Collier's view of the statute. The Bankruptcy Act, which was the subject of the Senate

---

[2] As explained in n. 7, <u>infra</u>, 1A Collier's on Bankruptcy, ¶ 15.12B at 1511 (14th ed. 1973) took a somewhat similar view regarding Bankruptcy Act § 15(3), but that view could be justified by the statute's permitting the revocation proceeding to be dismissed if the creditor was guilty of laches.

[3] S. Rep. No. 1173, 91st Cong., 2d Sess. 12 (1970).

Report cited to by Collier's, already included a provision, similar to current 11 U.S.C. § 727(a)(6), requiring the court not to grant the bankrupt a discharge if the bankrupt "in the course of a proceeding under this Act refused to obey any lawful order of, or to answer any material question approved by, the court." Bankruptcy Act § 14c(6).  However, at the time of the Senate Report, the Act included no provision for revocation of a discharge based on a refusal to comply with an order of the court.  Included in the Senate Report was a letter from the National Bankruptcy Conference[4] which had as an attachment an explanatory memorandum stating in pertinent part:

> Revocation, under the proposal, would be proper in addition to the present ground of fraud, where the bankrupt . . . refused to obey a lawful order of the court or answer any material question approved by the court any time during the pendency of the action.  For such refusal the time to apply for revocation is the present 1-year period or any time during the pendency of the proceeding, whichever is longer.  This change would render it unnecessary for the bankruptcy court to delay determining whether the bankrupt is entitled to a discharge in order to make sure that the bankrupt complies with orders and responds to questions after granting of the discharge.  Revocation of discharge rather than delay in granting would be a preferable procedure and is of sufficient strength to prevent abusive tactics by a bankrupt.

S. Rep. No. 1173, 91st Cong., 2d Sess. 12 (1970).  The memorandum is consistent with a literal interpretation of the statute as

---

[4] Although that letter addressed an earlier bill (S. 3523, 91st Cong. (1970)), and although S. 4247 91st Cong. (1970) was "a perfected version of the bill," S. 3523 and S. 4247 were identical with respect to the provisions of relevance here.

4

covering both pre-discharge and post-discharge refusals, as the memorandum expressly describes the statute as including refusals arising "any time during the pendency of the action." That the last two quoted sentences of the memorandum can be read as singling out post-discharge refusals for special comment does not alter the memorandum's earlier acknowledgment that both pre-discharge and post-discharge refusals are grounds for revocation of the discharge. Furthermore, that Congress may have focused on a specific problem in enacting a statute does not limit the statute's plain language to only that problem.[5] The Senate Report, therefore, does not support Collier's position.

Moreover, the statute itself contains strong evidence that § 727(d)(3) is not limited to refusals arising post-discharge. Section 727(d)(1) permits revocation of the discharge if:

> such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

A similar limitation could easily have been written into §

---

[5] See Union Bank v. Wolas, 502 U.S. 151, 157-58 (1991) ("[E]ven if Congress adopted the 1984 amendment [to § 547(c)(2)] to redress particular problems of specific short-term creditors, it remains true that Congress redressed those problems by entirely deleting the time limitation in § 547(c)(2). The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); Toibb v. Radloff, 501 U.S. 157, 164 (1991) ("[I]t makes no difference whether the legislative history affirmatively reflects such an intent, because the plain language of [§ 109] allows a consumer debtor to proceed under Chapter 11.").

5

727(d)(3), and if Congress wanted such a limitation, it presumably would have included it in § 727(d)(3). Although there are policy justifications for including such a limitation in § 727(d)(3), Congress may have determined that those policy considerations were outweighed by other competing policy considerations (one of which may have been the difficulty a trustee faces in ascertaining, at an early stage of a debtor's failure to comply with an order, whether the failure is based on a refusal instead of mistake or inability to comply).[6]

Furthermore, under Bankruptcy Act § 15 only a party in interest "who has not been guilty of laches" could seek to revoke a discharge, thus enabling the court to deny revocation when the party seeking revocation had been aware of the debtor's refusal well before the grant of the debtor's discharge.[7] Congress did not see fit to include the laches clause as part of Bankruptcy

---

[6] As observed by the plaintiff in footnote 2 of its memorandum:

> [T]o extend *Canfield* to a situation where no party had any reason to know prior to discharge that the debtor's disobedience was material would simply invite creditors in the future to defensively file objections to discharge even for seemingly-immaterial violations merely to preserve their rights – hardly a result this Court should encourage unless explicitly required by statute.

[7] Presumably this is why an earlier edition of Collier's opined that a failure to object to the granting of a discharge based on a refusal occurring prior to discharge "might preclude its use thereafter for the revocation of the discharge." 1A Collier's on Bankruptcy, ¶ 15.12B at 1511 (14th ed. 1973).

Code § 727(d)(3) and § 727(e), arguably reflecting a policy determination that no laches defense should be available for reasons similar to those leading Congress not to include in § 727(d)(3) the qualification on revocation of discharge found in § 727(d)(1).  See W. Suburban Bank of Darien v. Arianoutsos (In re Arianoutsos), 116 B.R. 116, 118-19 (Bankr. N.D. Ill. 1990); In re McDonald, 25 B.R. 186, 188 (Bankr. N.D. Ohio 1982).[8]  In any event, the failure to include a laches defense in Bankruptcy Code § 727(d)(3) removed any basis for inferring a requirement that for § 727(d)(3) to apply, the complaint must plead that the refusal to comply with an order arose post-discharge.

II

Section 15 of the Bankruptcy Act included an express provision barring parties who were guilty of laches from seeking revocation of a debtor's discharge, whereas the Bankruptcy Code contains no similar provision.  Barnes has not briefed the issue of whether nevertheless the doctrine of laches can be applied to a § 727(d)(3) complaint, and the court will not consider that issue in disposing of this motion.  If laches is an available

---

[8] It has been held that under Bankruptcy Code § 727(d)(1), knowledge prior to discharge of facts that indicate a possible fraud suffices to constitute knowledge of the fraud, thus barring a revocation of the discharge. Mid-Tech Consulting, Inc. v. Swendra, 938 F.2d 885, 888 (8th Cir. 1991).  In that sense, there is a duty under § 727(d)(1) to investigate diligently before discharge any conduct known to be possible fraud, but it is inaccurate to refer to a failure to fulfill that duty as presenting a laches defense.

7

defense, it is an affirmative defense to be pled and proven. See Rezin v. Barr (In re Barr), 207 B.R. 168, 174 (Bankr. N.D. Ill. 1997).  The court's ruling does not preclude Barnes from supplying arguments at a later stage to justify the application of laches notwithstanding that Congress elected not to include lack of laches as an express element of a § 727(d)(3) complaint.

III

Barnes argues that a debtor's mere failure to comply with an order does not constitute a refusal within the meaning of § 727(d)(3) where a creditor does not show willful or intentional disobedience, as opposed to inability, inadvertence, or mistake. However, paragraph 51 of the complaint alleges that Barnes refused to obey each of the orders.  The plaintiff is thus entitled to present evidence to show that Barnes's failure to comply with the orders arose from a refusal.

IV

Barnes argues that failure to comply with two of the six orders at issue (the two orders entered after the discharge was granted) ought not be a basis for revoking the discharge because Barnes eventually complied, citing In re Weisberg, 202 B.R. 332 (Bankr. D.N.H. 1996).  Although it is tempting to follow Weisberg because experience teaches that in almost all instances belated compliance with a routine order to correct filing deficiencies will not rise to the level of the debtor having, before such

compliance, "refused" to comply, the issue is one that ought to be addressed at a trial.  A creditor might show that the debtor's failure was a deliberate disregard of the court's orders--as opposed to a misunderstanding of what was required, or inaction attributable to circumstances which prevented the debtor timely to respond to the court's order--and that no other circumstances justify treating the failure, despite the routine nature of the order, as other than a "refusal."

In this regard, Barnes suggests that the revocation of a debtor's discharge is discretionary.  This may have been true under the Bankruptcy Act § 15 (using the word "may"), but it is not true under Bankruptcy Code § 727(d) (using the word "shall") unless "discretion" is understood to mean the court's exercising discretion in the fact finding process of determining whether a "refusal" occurred.

Additionally, the parties have not fully briefed what factors the court can take into account in exercising its fact finding discretion in determining whether there was a "refusal." For example, to establish a "refusal" does it suffice to show that the debtor engaged in conduct demonstrating an intentional failure to comply, despite an ability to do so, with what he understood an order to command?  Or may the court in deciding whether a "refusal" occurred consider additional factors such as whether the failure to comply caused no difficulties for the

9

trustee and creditors?  See Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 138 (1st Cir. 1992); Friendly Fin. Disc. Corp. v. Jones (In re Jones), 490 F.2d 452 (5th Cir. 1974) (Bankruptcy Act decision); In re Kokoszka, 479 F.2d 990, 997-98 (2d Cir. 1973) (Bankruptcy Act decision).  Although that may be a legal question, it is best decided in the context of a fully developed factual record.

V

Although the complaint additionally points to false statements in Barnes's schedules, the deadline to seek revocation of Barnes's discharge pursuant to 11 U.S.C. § 727(d)(1) based on those false statements expired under 11 U.S.C. § 727(e)(1) prior to the filing of the plaintiff's complaint, and the discharge cannot be revoked based on such false statements.  Accordingly, the complaint, which does not invoke § 727(d)(1), is limited to seeking a revocation of the discharge under § 727(d)(3).

VI

Barnes also seeks dismissal based on lack of standing, contending that the plaintiff has not alleged that it is a creditor.  However, the plaintiff alleges that it was owed a debt by Barnes on the petition date, which establishes creditor status on the petition date.  11 U.S.C. § 101(10).  The complaint then makes clear that the plaintiff is pursuing relief precisely because competing liens not scheduled by Barnes left no equity in

10

Barnes's real property from which the plaintiff's "debt owed to it," secured by a judgment lien on the property, could be paid. This suffices to allege an unpaid debt. In any event, the plaintiff's memorandum asserts that the plaintiff has not been paid, and the court will deem the complaint amended to include that allegation if it is not clear from the complaint already.

VII

In accordance with the foregoing, it is

ORDERED that the defendant's Motion to Dismiss (D.E. No. 5) is DENIED.

[Signed and dated above.]

Copies to:

Office of the United States Trustee; all counsel of record.